[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2005
THOMAS K. KAHN
CLERK

No. 04-15528
Non-Argument Calendar

_____

BIA Nos. A77-002-942,
A77-002-943

MARIA DEL PILAR CAJIAO,
ANDRES OREJUELA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(June 17, 2005)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Maria Del Pilar Cajiao and her husband, Andres Orejuela, (collectively "petitioners"), proceeding pro se, petition for review of the Board of Immigration Appeals' ("BIA's") denial of their motion to reopen, which was based on ineffective assistance of counsel. After review, we dismiss the October 27, 2004 petition to the extent it seeks review of the BIA's December 10, 2002 order affirming the Immigration Judge's ("IJ's") removal order. We deny the petitioners' October 27, 2004 petition to the extent it seeks review of the BIA's October 8, 2004 denial of petitioners' motion to reopen.[1]

## I. BACKGROUND

Petitioners are natives and citizens of Colombia. On March 9, 1999, the INS issued petitioners a Notice to Appear, which alleged that petitioners sought to enter the United States on February 26, 1999, by presenting a backdated stamp to conceal an overstay. The Notice charged petitioners with removability under 8 U.S.C. §§ 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I). The petitioners, represented by counsel, conceded removability and requested asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture and

---

[1]Because the petitioners' removal proceedings commenced after April 1, 1997, the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) apply. Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").

The petitioners asserted that they had been mistreated and threatened based on their membership in a social group, namely a financially well-off class.

## A.      Asylum Applications

In her application, Cajiao indicated that she and her family had been targeted by guerillas in Colombia for kidnaping and extortion because her family was in the construction business and a member of the industrial class, as well as a member of the conservative political party.  Cajaio further stated that on at least two separate occasions, kidnappers attempted to grab her and her children. Further, her brother was kidnaped but managed to escape.  Cajaio stated that she feared that if she returned to Colombia, the guerillas would rape or kill her if her family did not pay them.  In support of her application, Cajiao submitted the affidavits of her brothers, a friend, and her niece.

Orejuela filed a separate application, alleging the same basis for asylum as Cajiao and attaching the same affidavits.  Orejuela also stated that he feared that the guerillas would rape his wife and kill them if they did not pay the guerillas.

## B.      Hearing Before the IJ

During a hearing before the IJ, Cajiao testified that she and her husband had a house-construction business in Cali, Colombia, owned property, and were

financially well-off. Cajaio testified that one day when she and her husband, along with their children, were driving down the street, three men approached her husband's window and pointed a weapon at his head, threatening to kill him. The men asked for everything they had in their possession and then left. Cajiao believed that the men had wanted to kidnap them but could not do so because of the heavy traffic. They told a police officer about what had happened but he stated he could not do anything. Cajaio did not file a police report because she was afraid of the police.

Cajaio testified that on another occasion she was followed when driving with her daughter and niece. When she and the children stepped out of their car, three men exited from a taxi. Cajaio approached a police officer and told him that she was being followed, but the officer stated he could not do anything. She went to a store and called the police. She described one of the men to the police officers when they arrived, and the officer acted as if he recognized the description but then said he did not know the man. Cajaio was frightened that the officer recognized the description but refused to acknowledge it, so she declined to be escorted home. No confrontation took place between Cajaio and the men in the taxi, and she did not report the incident further.

Cajiao also testified that on another occasion when she stopped at a light on her way to pick up her husband, four men with machine guns stepped out of a Jeep. Cajiao drove away quickly, without paying attention to traffic lights. She did not have any contact with them. Cajaio testified that she did not know the identity of any of the individuals involved in any of the three incidents. After the last incident, she and her husband decided to obtain visas. When they returned from Bogota, where they had obtained a visa for her husband, the doorman at their condominium informed them that a list was being circulated by the guerillas with their name on it.

Orejula also testified at the hearing. His testimony included some of the same events as Cajiao's testimony, and testimony regarding the couple's financial situation in Colombia[2]

---

[2]The evidence before the IJ also included the U.S. State Department's Colombia Country Reports on Human Rights Practices for 1997. The 1997 report stated that Colombia has been plagued by internal violence and rampant killings for years. The major active guerilla organizations are the Revolutionary Armed Forces of Colombia and the National Liberation Army. The report stated that one group targeted by the guerillas consists of people who refuse to submit to recruitment or extortion, and that the guerillas have committed many human rights abuses including killings and kidnaping. The 1997 report indicated that a small number of asylum claims are received from applicants alleging that their membership in a wealthy business and/or landowning class puts them at particular risk from guerilla groups. However, in most of these cases, the terrorists are using extortion or ransom to obtain funds to finance their activities.

5

Also during the hearing, the petitioners' counsel attempted to introduce photographs of the petitioners' house to show that it was a nice house. The IJ denied their introduction because counsel had failed to follow a local rule requiring parties to submit the evidence they would seek to introduce at the hearing ten days prior to the hearing. Petitioners' counsel also had newspaper articles about the situation in Colombia, but did not try to introduce them because of the ten-day local rule.

After the hearing, the IJ denied the petitioners' application for asylum, withholding of removal, and CAT relief. The IJ found that the petitioners failed to establish either past persecution or a well-founded fear of persecution. The IJ further determined that the petitioners failed to meet their burden of proving that anyone in Colombia persecuted them based on any of the five enumerated grounds for asylum. Further, the IJ found that Cajiao's asylum application lacked detail and gave no weight to the attached affidavits. Additionally, the IJ found that the petitioners failed to provide any police reports or background materials establishing a credible fear of the police. The IJ also found that petitioners' testimony lacked credibility.

## C. Appeal to the BIA

The petitioners, with new counsel, appealed to the BIA, arguing that they had established that they were targeted based on their economic status. They also argued that if they did not meet their burden of proof for asylum, it was because their counsel during the proceedings before the IJ was ineffective. Specifically, they argued that former counsel had failed to comply with the ten-day rule, which prevented them from submitting several documents revealing the political and socio-economic situation in Cali, Columbia. They also argued that former counsel was to blame for the lack of detail in the asylum applications and the general nature of the affidavits. The petitioners also noted former counsel's failure to submit documentation concerning police corruption. Additionally, petitioners stated that they had filed a complaint about their former counsel with the Florida Bar.

On December 10, 2002, the BIA affirmed the IJ's decision to deny petitioners relief. The BIA determined that, contrary to the IJ's finding, the petitioners' testimony was credible. However, the BIA determined that petitioners had failed to show that their alleged persecution was motivated by any of the five statutory grounds for asylum. Concerning the ineffective-assistance-of-counsel claim, the BIA found that petitioners had not sufficiently complied with the requirements of Matter of Lozada, 19 I.&N. Dec. 637, 638-39 (BIA 1988), aff'd,

7

857 F.2d 10 (1st Cir. 1988). Specifically, the BIA found no evidence that petitioners had notified former counsel of their complaint and permitted counsel an opportunity to respond.[3]

Further, the BIA found that petitioners failed to establish that their former counsel's conduct had affected the outcome of their case, noting that they had testified in detail at the asylum hearing and supplemented the record with documentary information from the United States State Department concerning the conditions in Colombia. The BIA stated that, in the absence of a more complete showing, the petitioners had not demonstrated any prejudice due to the actions of their former counsel.

The petitioners did not appeal the BIA's December 10, 2002 decision to this Court. Instead, on February 7, 2003, the petitioners filed a motion with the BIA to reopen their removal proceedings. In their motion to reopen, they argued that their former counsel's lack of professionalism and failure to present documents affected the IJ's decision to deny their asylum applications. The petitioners further

---

[3]A motion based on ineffective assistance of counsel must: (1) be supported with an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard, (2) reflect that the petitioner has informed counsel whose integrity or competence is being impugned of the allegations leveled against him and allow counsel an opportunity to respond, and (3) show that a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities and if no complaint was filed, explain why not. Matter of Lozada, 19 I. & N. Dec. 637, 638-39 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1988).

submitted additional documentary evidence and arguments regarding the merits of their asylum claim.

On October 8, 2004, the BIA denied the petitioners' motion to reopen. The BIA determined that although the petitioners now complied with the requirements in Matter of Lozada, "they have still failed to prove any prejudice resulting from their former counsel's performance." Further, the BIA determined that the petitioners had failed to set forth any facts showing that their alleged persecution was based on a protected ground.

## II. DISCUSSION

### A. IJ's Asylum Decision

On appeal, the petitioners first argue that the BIA erred in its December 10, 2002 order affirming the IJ's decision to deny asylum, withholding of removal, and CAT relief. We do not have jurisdiction to review that December 10, 2002 order as the petitioners did not file a timely petition for review from the BIA's December 10, 2002 order affirming the IJ's decision.[4]

While we generally have jurisdiction to review final orders of removal, the petition for review must be filed within 30 days of the date of the final order of

_____

[4]We review de novo whether we have subject-matter jurisdiction. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002).

9

removal. See INA 242(a)(1), (b)(1), 8 U.S.C. § 1252(a)(1), (b)(1). The statutory time limit for filing a direct petition for review in an immigration case is "mandatory and jurisdictional" and is not subject to equitable tolling. Dakane v. United States Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005). The BIA's final order of removal in this case was filed on December 10, 2002, and the petition for review was filed on October 27, 2004, which is more than 30 days after the BIA's order was entered.

## B.  Motion to Reopen

The petitioners also argue that the BIA erred in its October 8, 2004 order denying their motion to reopen because their former counsel was ineffective. Petitioners maintain that they were prejudiced by their counsel's ineffectiveness. They assert that they were not granted asylum due partly to the fact that no witnesses, other than themselves, or documents were presented to the IJ, including newspaper articles in counsel's possession describing the turmoil in Colombia. The petitioners also maintain that they were prejudiced because the asylum application lacked detail. They argue that had their counsel been better prepared and presented evidence of their persecution and the situation in Colombia, they would have been granted asylum.

We review the BIA's denial of a motion to reopen removal proceedings for abuse of discretion. Dakane, 399 F.3d at 1272 n.2. The BIA abuses its discretion when its decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Mickeviciute v. INS, 327 F.3d 1159, 1162 (10th Cir. 2003) (internal quotation marks and citations omitted). Motions to reopen are disfavored, especially in a removal proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323, 112 S. Ct. 719, 724-25 (1992).

A petitioner claiming ineffective assistance of counsel must demonstrate substantial compliance with the Lozada requirements as well as prejudice. Dakane, 399 F.3d at 1274. "Prejudice exists when the performance of counsel is so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." Id. (citations omitted).

In this case, the BIA did not abuse its discretion by denying the motion to reopen because the petitioners failed to show that they were prejudiced by their counsel's representation. Because persecution based on economic status is

insufficient to establish persecution on account of membership in a particular social group, see Li v. INS, 92 F.3d 985, 987 (9th Cir. 1996) (low economic status is not a social group), the petitioners have failed to establish a reasonable probability that the outcome of the proceedings before the IJ would have been different if petitioners' former counsel had included more detail in their application or submitted newspaper articles describing the turmoil in Colombia.

Further, petitioners have presented no evidence or documentation that their counsel should have submitted that would have established that petitioners were victims of any more than harassment, criminal activity, or extortion, which do not amount to persecution. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) ("Persecution" is "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution."); Abdille v. Ashcroft, 242 F.3d 477, 494-95 (3d Cir. 2001) (evidence that an individual has been the victim of criminal activity does not constitute evidence of persecution); Bolshakov v. INS, 133 F.3d 1279, 1281 (9th Cir. 1998) (involving a factually similar case and concluding that the Russian-citizen petitioners were victims of criminal activity, not of persecution).

**PETITION DISMISSED IN PART; DENIED IN PART**.